Good morning, Your Honors. May it please the Court, my name is Daniel Dwan. Along with Emily O'Brien, I am Student Counsel for Petitioner Ms. De Leon-Lopez. I am also joined by our supervising attorneys, Gary Watt and Stephen Tolafield. I plan to reserve two minutes of my time for rebuttal. Your Honors, on page five of the record, in the third sentence of the first paragraph, the BIA lays out the only decipherable basis for affirming the immigration judge's decision in denying Ms. De Leon-Lopez's Nicara claim. It reads, and I quote, and although the respondent testified that she applied for ABC benefits within the time specified for expressing her intent to receive benefits under the ABC agreement, she failed to provide either a copy of the registration or any other objective evidence to show that she timely registered for such benefits. Your Honors, there are two flaws in this basis. Either the BIA applied the improper legal standard or the BIA's decision is so ambiguous that this Court cannot meaningfully adjudicate it. Both flaws require this Court to remand to the BIA. Turning to the first flaw, the BIA applied the improper legal standard. Without an express adverse credibility finding, the BIA cannot require Ms. De Leon-Lopez to submit cooperative documentary evidence. In this Court's case under Vera Viega v. INS, this Court stated that an applicant's credible testimony is sufficient to demonstrate her Nicara eligibility. Is that a case under the Real ID Act or did it precede the Act? It preceded the Act, Your Honor. What about this case? This case is after the Real ID Act, Your Honor. Did the Act make a difference? No, Your Honor. Your Honor is perhaps speaking to 8 U.S.C. 1229A. The general proposition, the Act was specifically aimed at invalidating much of our Court's case law, including the part that said that credibility determinations or adverse credibility determinations required before any cooperation could be requested. That starts to refer to the section that you were about to speak to. Why is it that you refer to the section that you were about to speak to? Well, there are two responses to that, Your Honor. First, 1229A.C.4.B. has never been extended to the special cancellation and removal context. This Court in Berrios v. Holder extended the imputation requirement under the Real ID Act, and this Court has never done so for the cooperation requirement. So why shouldn't we? Your Honor, that's because this Court's doctrine in Vera Viega still stands. The credible testimony of an applicant is still sufficient. Why? If Congress said as a general proposition our case law was wrong, that an immigration judge is empowered to say, I don't know that your say-so by itself is enough, particularly when there's some uncertainty around the testimony, corroboration is not unreasonable, please produce corroboration, why shouldn't that apply here? It applies in other parts of the statute. Your Honor, the policy discussed in Vera Viega still applies here. This Court should not penalize applicants in a difficult situation. Ms. DeLeon-Lopez shared the same characteristics as the Vera Viega's applicant in that she didn't That applies to all immigration applicants, and yet the Real ID Act did what it did. Furthermore, Your Honor, the agency's own internal policy states that credible testimony is sufficient. In 2006, the Director of Homeland Security, Joseph Langlois, published a memo to all asylum officers. There he spoke to the problems with NACAR applicants. He spoke that he spoke to the fact that applicants will have a difficult time producing cooperative documentary evidence because of the problems associated with the application and data processing process of NACAR applicants. Specifically, he spoke to the fact that many of these applicants do not know what they're filling out at the time of the application, and so there are inaccurate and incomplete applications. Indeed, in this instance, it appears that Petitioner wasn't clear on the difference between asylum and the NACAR application. The problem with that is that it casts some degree of doubt or shadow on her specific testimony that she applied for NACAR or ABC benefits in 1991. If she didn't really know what it was, then how can she be so certain that she applied in 1991, except that I suspect she had been told by her lawyer by that time it was important for her to have applied by 1991. But, okay, she says so in that circumstance. I.J. says, I can't be sure that's right. What more do you have? And the answer turns out to be nothing. Your Honor, under Zekinghu v. Holder, this Court stated that when the BIA does not And if this Court presumes that the applicant is credible – But wait a minute. One thing is being sincere and not lying, and that may be her position, but it's also possible that she didn't know what she was talking about. Your Honor, she didn't know what she was talking about. She specifically spoke to the fact that she went to the Miss Navarro twice, once to fill out an application for asylum and once to fill out an application for NACARA. She distinctly cooperated this statement with the fact that she heard advertisements on the radio telling her that this would benefit her, that her friends told her that this would benefit her, and that the Miss Navarro told her that this would benefit her. But, Your Honors, if this Court wishes to extend, is inclined to extend 1229a)(c)(4)(b), to the NACARA context, then there is another flaw in the interpreted virtually identical statutory language in 151158, the Asylum Context Cooperation Requirements statute. This Court stated that if the immigration judge would otherwise require cooperative documentary evidence, even in the face of credible testimony, then opportunity and a reasonable – a notice and a reasonable opportunity to either provide the documentary evidence or to reasonably explain why the evidence could not be presented must be given. In that case, this Court stated that the surest – or cited to a case in the Third Circuit that stated that the surest way this Court knows that the opportunity has been given is the passage of time between hearings. Now, what happened here is the immigration judge told Ms. Galeon-Lopez that perhaps she may need to provide cooperative documentary evidence with regards to her NACARA application. However, no opportunity ever was given to Ms. Galeon-Lopez with regards to that. If they will – Now, 5 years have passed. What does she have? Your Honor, she stated on the record on page – No. You're her counsel. What does she have? If this got sent back for the purpose that you're asking us to send it back to give her that opportunity, what would happen? What does she have to offer? Your Honor, she can either go to Ms. Navarro and ask her to – 5 years have passed. I mean, either – either she's got something or she doesn't. I mean, if she couldn't get it – if her explanation is going to be, I couldn't get it 5 years ago, it's unlikely the passage of time is going to help. So we ought to have some idea as to whether a remand for that purpose would be anything but an empty exercise. Your Honor, she can go back and get the documents from Ms. Navarro if it's there, or she can reasonably explain why she couldn't get those documents. That opportunity has never been presented to her. But there's plenty of time to do that before she went to the BIA. She could have asked for a remand there. She could have moved or reopened. To come here 5 years later and say, well, gee, I want to be able to go see if there are any documents that date back to what is now 22 years ago. I mean, kind of good luck with that. Your Honor, going back to Vera – Vera Villegas, this Court stated that applicants should not be punished for the passage of time. And so, if anything, this Court should give Ms. De Leon Lopez an opportunity to seek these documents or to simply tell the Court why she can't present them. That opportunity has never been given to her, and this Court should do so, so that this Court is not punishing an applicant in a difficult situation. And, Your Honors – I've eaten into your 2 minutes. You'll still get it. Thank you for the opportunity, Your Honors. Good morning. May it please the Court. Yamila Davila on behalf of the Respondent, the Attorney The court has failed to raise any issues of law sufficient to invoke this Court's jurisdiction. How about the proof requirement, that is, the ability of the I.J. to require corroboration. Isn't that a legal question?    Unfortunately for Petitioner, Petitioner's – Petitioner's argument is without merit because it turns upon a factual assessment. And here, the Court has determined in Lanuza and in Iscott that the determination of whether a registration is timely filed is a question of fact, that is without merit. But the question involved here is, I mean, she had testimony, not found incredible, that she'd filed timely. The I.J. elected to require corroboration, and it was because corroboration was not forthcoming that the I.J. concluded, as a factual matter, that she hadn't filed timely. But she testified that she filed timely. And if under our case law, at least the pre-Real ID Act case law in many contexts, we deem that a question of law, that is a question as to whether the I.J. had applied the right standard. Why isn't that a question of law here, too? Your Honor, as you noted earlier, this is a post-Real ID Act case, and the Real ID Act provisions apply. The immigration judge could have reasonably required corroboration, particularly where all that Petitioner testified to. Why do you say that? Is there a provision of the Real ID Act, which you can cite, that says in application of NACARA, corroboration can be required to establish a timely filing? No, Your Honor. What I can say is that it is a post-Real ID Act case. So what? So I'll ask the question again. It's a post-Real ID Act, right? Is there anything in the Real ID Act which tells us that the I.J. can require corroboration as to the date of filing under NACARA? If so, please tell me. Where is it? No, Your Honor, because NACARA is in IRERA. It's not in the INA. So how did the Real ID Act change anything? Your Honor, except for this Court in Lanuza extended the IRERA provisions into the INA. And this Court also, in its en banc decision in Singh, decided that wasn't all embracing, that there are parts of the Real ID Act's change in our case law. That doesn't apply to everything. There are some things that doesn't apply to. Why is this something that applies to? That came out really tangled. Did it make any sense to you? I didn't understand that, Your Honor. But can I just put forward that persuasively, although Petitioner cites to CIS's memorandum of 2006, they do not cite to the second page of that same memorandum that states that credible evidence should be considered in, excuse me, credible testimony is enough to establish eligibility for NACARA if that testimony is sufficient to establish by preponderance of the evidence that the application. Well, wait, wait, wait. Since when does a department memo decide what Ninth Circuit case law is? Your Honor, it does not. I'm trying to find out the answer to Judge Bea's question, which is you're asserting that Ninth Circuit case law on this subject has been changed because of the Real ID Act. Okay. What section of the Real ID Act? I don't know. And then you give me a department memo. There's something missing there. The department memo isn't the statute. So I need to know what part of the Real ID Act changed the rules for NACARA application. Your Honor, I cannot identify a part of the Real ID Act that changed. You shouldn't assume that it did. If it didn't, isn't that a problem for the government's position? Our position is that the binding precedent of this Court in Lanuza and Iscott is that the determination of timeliness of registration is a question of facts beyond the jurisdiction of this Court. And here the question is not a question of credibility, but of the sufficiency of the evidence, which is distinctly the province of the trier of fact. But if the IJ didn't have the legal right to demand corroboration once an adverse credibility finding had not been made, that is a legal question. In other words, he was making a determination on evidence which he said the Petitioner had to provide when he didn't have the legal authority to demand that evidence. Now, deal with that, please. Your Honor, it's important to note that in this record, the immigration judge didn't determine that Petitioner didn't file her application on time because she didn't provide corroboration. He determined that because she didn't testify that she timely filed it. She testified that she signed. She testified in so many words. She testified that she signed the registration form. She didn't testify that she mailed it or witnessed its mailing. And under the regulations ---- Ms. Navarro. Who was Ms. Navarro? The notario. Petitioner's notario. So she ---- the Petitioner testified that she signed this document in front of her notary. She's a Central American. Notaries have a different character in Central America than they do here. And she handled this document thinking that this notary is going to file it, right? Your Honor ---- So what you're saying is that that's not sufficient evidence that she actually did file it. Your Honor, an application is not considered filed with the INS until it is received by the INS or there is clear and convincing evidence of mailing. And neither of those two were provided here. With respect, I don't find in the I.J.'s opinion what you just told me. I find something that says Respondent has zero circumstantial evidence. She only has her self-serving testimony and nothing more. I read that to say, well, she said it, but no corroboration, and I require corroboration. I don't see that to say that, well, she said she signed it with the notario, but the notario didn't mail it in, and we're not sure the notario mailed it in, so we're going to say it was never filed, even though, yes, I accept the fact she signed it. You said the latter. I read it as the former. Where am I wrong? Although the immigration judge did not specifically say that, that is in Petitioner's   Well, then why are you trying to give me an argument that says what the immigration judge says, what he didn't say? I mean, what is the basis of the ruling here? Your Honor, I was simply trying to explain that the immigration judge required corroboration because Petitioner didn't testify that she filed the application. So we're now back to the question of whether it requires corroboration and whether that's a question of law. Are you familiar, and I confess that you may not be, I'm too familiar because I was joined to dissent in the case, but our Court had an en banc decision two years ago in a case called Singh. That doesn't exactly distinguish it from a lot of immigration cases. For some reason, the iPad isn't pulling it up right at this moment, so I'll talk for a second. It had to do with application of asylum in the one-year bar. And this Court decided en banc that the Real ID Act's provisions with regard to requiring corroboration did not apply to the one-year bar for asylum, and that this Court was a matter of law. That seems to me like an exact parallel to this case. So why doesn't our en banc decision in Singh say that, first, this is a question of law, and, second, that the corroboration requirement is a violation of a violation of law by the I.J.? Yes, Your Honor, because in Iscott, treating a similar case, this Court determined that that is not a question of law. It's a factual determination that this Court is without jurisdiction. So our decision in Iscott overturned our court's en banc determination in Singh? No, Your Honor. It may be that these are conflicting decisions of this Court, but they are binding precedent. It is our position that this Court is without jurisdiction. Which one is binding? If they conflict, which one is binding? You say they're binding precedent, but which one? Your Honor, our position is that Iscott is binding in this case because it is directly on point with the situation here, where the issue is the timing of the registration. And this Court has determined that that's a factual determination without jurisdiction. And is Iscott a case where the IJ decided that the proof fell short because the applicant testified but couldn't provide corroboration? Yes, Your Honor. And this case is directly distinguishable from Challey, where this Court determined that there was sufficient proof of filing on time where the Petitioner filed in person with the INS before the deadline for NACARA registration. Your Honor, the government would also like to note that Petitioner appears to be, before my time is up, Petitioner appears to be eligible for discretionary exercise of, excuse me, an exercise of discretion. She has not asked for that, but we do not object to the placing of this case in mediation while it's determined whether or not she is eligible for an exercise of discretion. What type of discretion do you have on it? Prosecutorial discretion, Your Honor. Petitioner has not requested that from DHS, but just in reviewing this case, we've determined that she may be eligible, background checks do need to be completed, and we do not object to the case being placed in mediation. We should ask Mr. Duan if he would agree to that. Thank you very much. Actually, I appreciate that offer. You might communicate with your office. I realize you're trying to work on a backlog, too, but the earlier that determination the sooner the determination is reached, that determination, if it had been reached a couple months ago, could have saved all of this, because as it happens, we've prepared for it, counsel is all prepared for it, and we're all working against a mountain of files, but please make efforts to try to get to it sooner rather than later. Yes, Your Honor, absolutely. And in this case, since it was not flagged by Petitioner, it does require us to just delve into it and ask the agency ourselves. And the alternative, we do request that this Court deny the petitioner for review in part and dismiss it in part. Thank you, Your Honor. Thank you. So let's start with the offer made by the government. And we'll give you a chance to speak to the issues, but and I realize you haven't had a chance to consult with your client, but I have to assume that your client would be interested in finding a resolution through mediation in the face of the government's offer. Yes, Your Honor, Petitioner would request that this Court reserve making its decision until after the mediation has been decided. With regards to the issues, Your Honor, first, this Court does have jurisdiction. Ixcot and Zing are not conflicting. Ixcot v. Holder was over a factual issue. Whether substantial evidence supported the timeliness of an applicant's application. However, here, just as Your Honor has mentioned in saying, as well as in Burials v. Holder, this is about what is the proper legal standard. Is cooperation required in all cases in Nicara? So this is definitely a question of law. In Burials v. Holder, this Court stated that an application of law to undisputed facts is still a question of law. Turning to Your Honor's second concern with regards to the extension of the REAL ID Act to Nicara, nothing in the rules suggests that the cooperation requirement even extends to Nicara, especially in light of the agency's own words in the 2006 Langlois Memo and the 2008 Langlois Memo. Both memos published after the passage of the REAL ID Act. And while it's persuasive, it provides the context. Applicants will have difficulty getting these cooperative documentary evidence, and the rule should not be applied to Nicara applicants. Alito, is there any authority of our Court paying attention to the kind of internal memos you're describing? Your Honor, the internal memos are persuasive. They are definitely not binding on this Court, but this Court can look for them to provide context and to show policy why the REAL ID Act should not be applied to Nicara context. Lastly, Your Honor, she did testify. The BIA decision on page five states that she testified for her Nicara application before December 31st, 1991. It's undisputed by the agency in the BIA's decision. So it seems odd that the government brings that she did not testify. She testified both in front of the immigration judge as well as it was reviewed by the BIA. And so there is no factual dispute over that. Thank you, Your Honor. Pardon me. Page five of the BIA says since the Respondent filed her asylum application after the April 1st, 1990 filing deadline, that application cannot form the basis. Is that what you mean? No, Your Honor. On page five, the third sentence, before the BIA stated their basis for rejecting Are you talking about ER-5? Yes. The third sentence from the top? Your Honor, the sentence is Although the Respondent testified that she applied for ABC benefits within the time specified, blah, blah, blah, I take it that sentence. Yes, Your Honor. And so the asylum application was filed in 1993, but she did state and testified to that she filed for ABC benefits before December 31st, 1991. Okay. And that should be sufficient, Your Honors. Thank you. Thank you. We thank both counsel for your helpful arguments. We particularly thank the project for taking on the case and commend the student counsel for an excellent presentation. We will enter an order referring the case to the Mediation Office and will withhold submission pending resolution, knock on wood, of the mediation. Thank you, and we'll proceed to the next case.
judges: Duffy, Clifton, Bea